IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ELLENI HAILE SHIFERAW, *Petitioner*, v. MARKWAYNE MULLIN, *et al.*, *Respondents*. | 1:26-cv-02394-MSN-WEF |

**ORDER**

This matter comes before the Court on Elleni Haile Shiferaw's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which she challenges the lawfulness of her detention by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). Petitioner, a citizen of Ethiopia, received a final order of removal in 2009 but was granted deferral of removal under the Convention Against Torture ("CAT"). ICE later issued Petitioner an Order of Supervision ("OSUP"). On August 4, 2026, ICE officers arrested Petitioner when she appeared for a scheduled check-in. Petitioner contends that her current detention violates 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that ICE failed to follow its regulations in revoking her OSUP. Petitioner also contends that ICE cannot remove her to Cameroon—the third country ICE has designated for her removal—without allowing her to raise a credible fear of removal before an Immigration Judge. For the reasons that follow, the Court will grant her Petition.

**I. BACKGROUND**

Petitioner is a citizen of Ethiopia who entered the United States on a nonimmigrant B-2 visa in 2022. ECF 6-2 ¶¶ 5-6. She currently resides in Virginia with her U.S.-citizen husband and their two U.S.-citizen children. ECF 1 ¶ 32.

In 2003, the United States Citizenship and Immigration Services ("USCIS") served Petitioner with a Notice to Appear, placing her in removal proceedings. 6-2 ¶ 11. An Immigration

Judge ("IJ") initially denied Petitioner's application for asylum and withholding of removal, and ordered her removed to Ethiopia. ECF 6-2 ¶ 12. The Board of Immigration Appeals ("BIA"), however, reversed the IJ's decision. ECF 1-2. The BIA concluded that Petitioner had credibly testified that she had previously been arrested and detained in Ethiopia due to her support for a political independence movement; she had been repeatedly beaten and raped while in detention; she was only released from prison because she was able to bribe prison officials; she had been forced to flee Ethiopia under a false identity; and her brother, who was also active in the independence movement, had been detained and his whereabouts were unknown. ECF 1-2 at 5. The BIA thus concluded that Petitioner was eligible for deferral of removal under CAT and remanded the case to an IJ who, on July 22, 2009, ordered Petitioner removed to Ethiopia but granted her deferral of removal. *Id.* at 5-6; ECF 1-1.

On November 14, 2011, ICE placed Petitioner on an OSUP "[b]ecause the agency ha[d] not effected [her] deportation or removal during the period prescribed by law." ECF 1-3 at 1. Petitioner alleges—and Respondents do not dispute—that, since being placed on an OSUP, she has "faithfully complied with every condition imposed by ICE." ECF 1 ¶ 36. Moreover, on February 24, 2022, USCIS approved the Form I-130, Petition for Alien Relative, that Petitioner's husband filed on her behalf. *Id.* ¶ 37.

Nevertheless, on August 4, 2026, when Petitioner appeared for a scheduled ICE check-in, ICE took Petitioner into custody with no advanced warning. *Id.* ¶ 38. ICE issued Petitioner a Notice of Revocation of Release that same day which purported to revoke Petitioner's OSUP pursuant to 8 C.F.R. § 241.4(*l*). ECF 6-3. The Notice of Revocation stated that ICE was revoking Petitioner's OSUP because "[t]he purposes of release have been served" and "[i]t is appropriate to enforce the removal order entered against [her]." *Id.* Specifically, the Notice of Revocation represented that "[a]t this juncture, circumstances have changed in which DHS will be pursuing Third Party

Country removal." *Id.* The Notice left blank the field indicating which country Petitioner would be removed to and did not indicate that ICE was seeking travel documents. *Id.* ICE, however, issued Petitioner a separate Notice informing her that it intended to remove her to Cameroon. ECF 6-6.

On August 5, 2026, Petitioner submitted a sworn affidavit stating that she fears "being sent to Cameroon or any other country where [she] believe[s] [she] will be harmed, killed, or just sent back to Ethiopia." ECF 7-1. In her affidavit, Petitioner requested a Third Country Fear Interview. *Id.* She has not received one. *Id.* Through this Petition, she seeks her immediate release. ECF 1.

## II. DISCUSSION

### A. Revocation of Petitioner's Order of Supervision

Petitioner argues that she is entitled to release because ICE failed to follow its regulations in revoking her Order of Supervision (Count III). The Court agrees.[1]

The Immigration and Nationality Act's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8

[1] Federal Respondents argue that this Court should decline to exercise jurisdiction over the Petition because Petitioner is a member of the non-opt out class in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). ECF 6 at 18 n.3. As another court in this District has thoroughly explained, these arguments are meritless. *See Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 3-5 (E.D. Va. Feb. 3, 2026); *see also, e.g., Garcia-Rivera v. Noem*, 1:26 cv-00229-MSN-WBP, ECF 6 at 3 n.2 (E.D. Va. Mar. 2, 2026) (concluding same). As of the date of the entry of this Order, final judgment in D.V.D. has been stayed. *See D.V.D. v. Dep't of Homeland Sec.*, 1:25-cv-10676, ECF Nos. 242, 246 (D. Mass. Feb. 26, 2026). Moreover, Petitioner's challenge to her ongoing detention and the revocation of her Order of Supervision raise issues that are substantively different from the claims at issue in D.V.D., which largely focus on the procedural due process protections due to noncitizens subjected to third-country removal. *See D.V.D. v. Dep't of Homeland Sec.*, 821 F. Supp. 3d. 102, 2026 WL 521557, at *27-40 (D. Mass. Feb. 25, 2026).

C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

"The procedures required to revoke each of these forms of release are different." *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 208 (D. Mass. 2026). An order of release under § 241.4 may be revoked where (1) the purposes of release have been served, (2) an individual violates her conditions of release, (3) it is appropriate to enforce a removal order, or (4) DHS determines that revocation is in the public interest. 8 C.F.R. § 241.4(*l*)(2). By contrast, DHS may only revoke release that was ordered under § 241.13 if it makes an individualized determination that, based on changed circumstances, removal has become significantly likely in the reasonably foreseeable future. *Phommachak*, 816 F. Supp. 3d at 208. "When § 241.13(i) governs revocation, the procedures outlined for revocation under § 241.4(*1*) do not apply." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3.

Here, Respondents purported to revoke Petitioner's OSUP under 8 C.F.R. § 241.4(*l*)(2), on the grounds that the "purposes of [her] release" had been served, and it was "appropriate to enforce the removal order against [her]." ECF 6-3. The text of Petitioner's OSUP, however, strongly suggests that Petitioner was ordered released under 8 C.F.R. § 241.13. ECF 1-3. Her OSUP states that DHS ordered Petitioner's release on supervision "[b]ecause the agency has not effected [her] deportation or removal during the period prescribed by law." *Id.* at 1. This text matches § 241.13, which states that DHS shall release individuals "who are subject to a final order of removal and are detained . . . after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of [her] removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). In contrast, to release Petitioner under § 241.4, DHS

would have had to conclude that travel documents were not available, Petitioner did not pose a risk to safety or flight, and was not likely to violate the conditions of her release. 8 C.F.R. § 241.4(e). None of these findings appear on the face of Petitioner's OSUP; therefore, the Court concludes that § 241.13—not § 241.4—governs Petitioner's OSUP and the revocation of her release.[2] *See Pop v. Mullin*, 2026 WL 2274627, at *4 (E.D. Va. Jul. 23, 2026).

Applying § 241.13, the Court concludes that Respondents did not properly revoke Petitioner's OSUP. Under § 241.13, it is Respondents who bear the burden to prove that circumstances have changed and that Petitioner's removal has become "significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3 (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025)). Respondents have not met their burden. From 2009 to 2026, Respondents were not able to effectuate Petitioner's removal and, as late as March 2025, USCIS issued her employment documents upon a determination that her removal was "impossible or impracticable," which "is a highly relevant admission suggestive of their general inability to remove Petitioner." *Ciciliano v. Guadian*, --- F. Supp. 3d ---, 2026 WL 1703590, at *3 (E.D. Va. June 11, 2026); ECF 7-3. The Notice of Revocation itself does not identify changed circumstances beyond DHS's decision to "pursu[e] a Third Party Country Removal." ECF 6-3. And while ICE

---

[2] Even if the Court were to conclude that 8 C.F.R. § 241.4 governed Petitioner's OSUP, Respondent's revocation would still violate the *Accardi* doctrine. An OSUP under § 241.4 may be revoked where (1) the purposes of release have been served, (2) the noncitizen violates any condition of release, (3) it is appropriate to enforce a removal order or commence removal proceedings, or (4) the conduct of the noncitizen indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(*l*)(2). As to who may exercise authority under Section 241.4(l)(2), the regulations provide that either the Executive Associate Commissioner ("EAC") can exercise their discretion to revoke release, or a district director can revoke release in the limited circumstance where "in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(*l*)(2). Respondents argue that they properly revoked Petitioner's OSUP because the EAC delegated authority to an Associate Field Office Director to revoke release, and the Associate Field Office Director stated that DHS's desire to enforce Petitioner's order of removal constituted "a determination that revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director." ECF 6-3. But without any finding or explanation "as to why revocation of the order of supervision serves the public interest, or why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner . . . the Court cannot infer that to be the case—nor is it required to do so—where the regulations require such a determination." *Serpas v. Simon*, *Serpas v. Simon*, --- F. Supp. 3d ---, 2026 WL 1244544, at *5 (E.D. Va. Feb. 3, 2026); *Hernandez Mendez v. Mullin*, 1:26-cv-1881-ATJ-LRV, ECF 8 at 5 (E.D. Va. Aug. 4, 2026).

now claims that "Cameroon has accepted Petitioner for third country removal," ECF 6-2 ¶ 20, "the *Notice of Revocation* does not identify such [changed] circumstances," *Kassye v. Mullin*, 1:26-cv-1648 (RDA/LRV), 2026 WL 1832368, at *4 (E.D. Va. June 24, 2026) (emphasis in original).

Perhaps most significantly, Petitioner cannot be properly removed to Cameroon until she has an opportunity to express a fear of removal and have an IJ review the credibility of that fear. *See infra*; *see also Ciciliano*, 2026 WL 1703590, at *3; *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *12 (D. Md. Jan. 9, 2026); *Serpas v. Simon*, --- F. Supp. 3d ---, 2026 WL 1244544, at *6-8 (E.D. Va. Feb. 3, 2026). Respondents have refused to provide Petitioner with this opportunity, because they believe it is not constitutionally required. ECF 6 at 20. But Respondents cannot manufacture the likelihood of removal "by skipping other procedures that are constitutionally due." *Portela-Hernandez*, 2026 WL 74042, at *14. Where, as here, Petitioner has raised significant concerns about whether her removal to Cameroon can be properly effectuated, *see* ECF 7 at 16-17, the Court cannot conclude that Respondents have met their burden to show that her removal is "significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Portela-Hernandez*, 2026 WL 74042, at *14; *Ciciliano*, 2026 WL 1703590, at *3; *Osorto v. Crawford*, No. 1:26-CV-2211-MSN-IDD, 2026 WL 2249977, at *3 (E.D. Va. Aug. 3, 2026).

Because Respondents have failed to follow § 241.13 in revoking Petitioner's OSUP and detaining her, and because that regulation was promulgated to protect Petitioner's right to due process, Petitioner's current detention is unlawful, and she is entitled to immediate release. *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Sokpa-Anku v. Mullin*, 1:26-cv-01504, 2026 WL 1878709, at *3 (E.D. Va. June 29, 2026) ("In habeas cases where ICE revoked an OSUP in

contravention of binding regulations, this Court has consistently vacated ICE's revocation of the OSUP and ordered the Petitioner's immediate release from custody.").[3]

**B. IJ Review of Credible Fear**

Petitioner also argues that she has a due process right not to be removed to any country to which she has expressed a fear of removal without IJ review of that claim. (Count II). Here too, the Court agrees.

This Court has already explained, on multiple occasions, that procedural due process requires noncitizens to have an opportunity for IJ review of a credible fear determination by a USCIS asylum officer. *See, e.g.*, *Garcia-Rivera*, 2026 WL 1244545, at *3; *Serpas*, 2026 WL 1244544, at *7-8; *Ciciliano*, 2026 WL 1703590, at *3. Respondents argue here that Petitioner is entitled to even *less* process than that which the Court has already deemed constitutionally deficient; they claim that Petitioner is entitled to no individualized credible fear review even before an asylum officer. ECF 6 at 19-20. But a blanket refusal to review her claim of credible fear cannot survive a due process challenge when this Court has already concluded that IJ review is required. *See Kassye*, 2026 WL 1832368, at *6-7 (rejecting notion that providing no credible fear screening whatsoever complies with procedural due process or that ordering such a screening conflicts with the Supreme Court's decision in *Munaf v. Geren*, 553 U.S. 674 (2008)). Nor can the Department of State's blanket statement that it believes individuals will not be subjected to torture or persecution in Cameroon substitute for an individualized assessment of whether *Petitioner* has a credible fear. *Id.* And while Respondents throw out a host of jurisdictional arguments to claim that the Court is barred from ordering them to provide Petitioner with a credible fear process, those arguments are similarly unpersuasive. As another jurist of this Court has explained, the Court may order Respondents through habeas to provide Petitioner with a full credible fear process because

[3] Because the Court concludes that Respondents violated the *Accardi* doctrine in re-detaining Petitioner, it need not adjudicate Petitioner's *Zadvydas* claim (Count I).

such a claim "impl[ies] the invalidity" of Respondents' attempts to otherwise remove Petitioner. *Kassye*, 2026 WL 1832368, at *5 (quoting *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025)). Moreover, 8 U.S.C. § 1252(g) does not bar this Court's review because Petitioner "does not challenge in habeas the *decision* to execute an order of removal; rather, Petitioner challenges the *process* [s]he receives." *Id.* (emphasis in original).

In sum, Petitioner is entitled as a matter of procedural due process to asylum officer and immigration judge review of her claim that she fears persecution or torture in Cameroon, or any other third country DHS designates for her removal. *Serpas*, 2026 WL 1244544, at *8.

## III. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Petition (ECF 1) is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all her personal property; it is further

ORDERED that Petitioner's Order of Supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13; and it is further

ORDERED Respondents and any of Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country; it is further

ORDERED that Respondents and any of Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from removing Petitioner from this judicial district and the continental United States unless (1) she receives the opportunity for an asylum officer to conduct an assessment of any fear that she will be persecuted

or tortured upon removal from the United States to a third country pursuant to 8 C.F.R. § 208.31(c); (2) she has an opportunity to have any negative decision regarding her credible fear of persecution or torture reviewed by an immigration judge, pursuant to 8 C.F.R. § 208.31(g); and (3) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

August 21, 2026
Alexandria, Virginia